# IN THE COURT OF APPEALS OF IOWA

————————————

No. 26-0624
Filed July 8, 2026

————————————

**In the Interest of M.D.-J., Minor Child,**

**A.J., Mother,**
Appellant.

————————————

Appeal from the Iowa District Court for Winnebago County,
The Honorable Karen Kaufman Salic, Judge.

————————————

**AFFIRMED**

————————————

Jane M. Wright, Forest City, attorney for appellant mother.

Brenna Bird, Attorney General, and Lisa Jeanes, Assistant Attorney
General, attorneys for appellee State.

Theodore James Hovda, Garner, guardian ad litem for minor child.

Carrie Jean Rodriguez of Rodriguez Law LLC, Garner, attorney for minor
child.

————————————

Considered without oral argument
by Tabor, C.J., and Chicchelly and Sandy, JJ.
Opinion by Sandy, J.

**SANDY, Judge.**

The juvenile court terminated the parental rights of the mother[1] of a child born in 2015 after a lengthy history of instability and substance use. On appeal, the mother challenges the statutory grounds supporting termination, the determination that termination is in the child's best interest, and the finding that exceptions to termination did not apply. We affirm.

## BACKGROUND FACTS AND PROCEEDINGS.

M.D.-J was born in 2015. The Iowa Department of Health and Human Services (HHS) became involved with the family in 2020. On November 18, 2024, M.D.-J was adjudicated a child in need of assistance (CINA) and removed from the mother's care on January 9, 2025, after a hair follicle test returned a positive result for methamphetamine. The house M.D.-J was removed from also did not have running water and was covered in dog feces. Other causes for removal included, substance use and mental health issues, lack of housing and childcare, lack of protective capabilities, unresolved parent-child conflict, and lack of engagement with services. Throughout this time, the mother did not complete mental health or substance abuse services, she missed drug tests and later, again, tested positive for methamphetamine and THC in April of 2025.

Throughout fall of 2025, the mother was absent. She did not participate in services offered by HHS, missed multiple visits with M.D.-J and missed the permanency hearing in January of 2026. The court ordered the filing of a termination petition. It is at this point that the mother decided to enter a sober living facility where she stayed throughout the termination hearings. Her drug tests in the sober living facility all returned negative

---

[1] The father's parental rights were also terminated; however, he does not appeal.

results. She also secured employment for the first time since this case began. In February, the mother visited M.D.-J for the first time in almost six months. The court entered an order terminating parental rights on March 24, 2026.

## STANDARD OF REVIEW

Our review of juvenile court orders terminating parental rights is de novo. *In re J.V.*, 13 N.W.3d 595, 603 (Iowa 2024). We use a three-step process in our review, determining whether (1) the State established a statutory ground for termination under Iowa Code section 232.116(1); (2) the termination is the in child's best interests while applying the framework established in section 232.116(2); and (3) a permissive exception under section 232.116(3) should be applied. *In re A.B.*, 957 N.W.2d 280, 294 (Iowa 2021).

## DISCUSSION

### I. Statutory Ground

The juvenile court terminated the mother's parental rights under Iowa Code section 232.116(1)(f) and (*l*). On appeal, the mother challenges the termination under paragraph (f) and fails to contest termination under paragraph (*l*); thus, she waives any argument under paragraph (*l*). *See Hyler v. Garner*, 548 N.W.2d 864, 870 (Iowa 1996) ("[O]ur review is confined to those propositions relied upon by the appellant for reversal on appeal."). We may affirm on any ground in the record, even if it is not appealed by the parent. *In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). Since termination under paragraph (*l*) is uncontested, we affirm the district court's determination that the ground under that paragraph has been met.

## II.  Best Interests

The mother also claims the juvenile court wrongly concluded that termination of her parental rights was in the best interests of M.D.-J. We "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child" in deciding what is in the best interest of a child. Iowa Code § 232.116(2). We weigh "[t]he reasonable preference of the child" if "the child has sufficient capacity," but it is not exclusively dispositive. Iowa Code § 232.116(2)(b)(2). Our primary concern is the best interests of the child, both long-term and immediate. *In re J.H.*, 952 N.W.2d 157, 171 (Iowa 2020). We may consider the parent's past performance to predict the quality of care the parent may provide in the future. *Id.*

The juvenile court reasoned:

> [T]he history of this case makes lasting progress circumspect. . . . [The m]other has three other children who she has not raised because of her individual struggles with substances, mental health and her life choices. One of those children sexually abused [M.D.-J]. [M.D.-J] was the subject of 20 child abuse and family assessments over the course of four years. Her childhood home was uninhabitable. She was left in the hands of a parent who was not safe or sober. . . . She has endured long periods of lack of contact with [the m]other. In short, [the m]other's struggles are not new and long pre-date the CINA [proceedings] by years.

We agree. Given that the mother has only just recently taken interest in sobriety and HHS services and went almost six months without seeing M.D.-J, we are unpersuaded that the protective concerns have ceased to exist. *See In re D.M.*, 516 N.W.2d 888, 891 (Iowa 1994). The mother asks for six more months, but we will not withhold permanency from M.D.-J with the hope that "someday a parent will learn to be a parent and be able to provide

a stable home for the child." *In re P.L.*, 778 N.W.2d 33, 41 (Iowa 2010). We can say it no better than the juvenile court: "It is documented that [M.D.-J] has not had her needs met by her parents for over half of her life, and it seems unlikely that will change in a short of period of time."

### III. Permissive Exception

Next, the mother argues that two exceptions exist that preclude termination. She claims that M.D.-J is "over ten years of age and objects to the termination" and "termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." Iowa Code § 232.116(3)(b), (c). After looking at the unique facts of a case, we exercise our discretion to decide if an exception should apply, and the mother carries the burden of proof. *In re A.S.*, 906 N.W.2d 467, 475–76 (Iowa 2018).

Here, we are unpersuaded. While M.D.-J does express the desire for her parents to be offered more time, the mother has repeatedly shown that she cannot be trusted to provide M.D.-J with a safe and stable life. And while there is no doubt that there is love between M.D.-J and the mother, M.D.-J nonetheless deserves stability and permanency. The mother's argument that M.D.-J was able to forgive her for her months-long absence after just one visit does not support use of the second exception. Rather, it reveals M.D.-J. deeply desires—and deserves—a caretaker that will responsibly care for her. But the inverse has occurred here. The juvenile court opined that "[M.D.-J] was noted to be very parentified and feeling a heavy responsibility of caring for [the m]other." A child should not have to feel parental love towards their parent and M.D.-J. has been saddled with responsibility that no child should

be forced to carry. "Children should not be made to suffer indefinitely in parentless limbo." *In re A.C.*, 415 N.W.2d 609, 613 (Iowa 1987).

We decline to apply the permissive exceptions.

**AFFIRMED.**